**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony David Cortez, ) | CIV 13-1570-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Tony David Cortez's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On April 22, 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning July 1, 2011. (Transcript of Administrative Record ("Tr.") at 23, 172-78, 179-85, 220.) His applications were denied initially and on reconsideration. (Tr. at 81-88, 89-95.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 98-99.) A hearing was held on October 17, 2011, (Tr. at 41-71), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 20-38). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

1
2
    (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

3
4
    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 1, 2011 – the alleged onset date. (Tr. at 25.) At step two, he found that Plaintiff had the following severe impairments: history of left shoulder surgery; hypertension; mild degenerative disc disease of the cervical spine; and mood disorder. (Tr. at 25-26.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 26-27.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform at least light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that, he has no limitations with respect to his right upper extremity and can lift approximately 30 pounds with his right hand."[1] (Tr. at 27-31.) The ALJ continued stating that Plaintiff –

    has had surgery on the left shoulder and can only lift about 5 pounds with his left hand. He is left hand dominate. He can sit or stand for up to 1 hour (each) at a time and for a total of 6 hours (each) in a 8-hour-day. He can walk around a block. With respect to his understanding and memory, he is mildly impaired in his ability to understand instructions and remember instructions, locations, and work-like procedures by what appears to be intellectual functioning around the low average range. In the area of sustained concentration and persistence, he is able to carry out instructions and sustain a normal routine without special supervision. He is also able to maintain attention [and]

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

>concentration. As well, with respect to social interaction, no problems were observed regarding the claimant's ability to get along with co-workers, respond appropriately to supervision, and maintain socially appropriate behavior. No problems were observed in the claimant's ability to adhere to basic standards of neatness either. Finally, with respect to the claimant's adaptation functioning, no problems were suspected in the claimant's ability to respond appropriately to changes in the work setting or to be aware of normal hazards and take appropriate action.

(Tr. at 27-31.) The ALJ determined that Plaintiff "is capable of performing past relevant work as a stock selector and laboratory equipment cleaner," stating that this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 31-33.)

Therefore, the ALJ concluded that Plaintiff has not been under a disability from July 1, 2011, through the date of his decision. (Tr. at 33.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to properly consider his subjective complaints. Plaintiff requests that the Court remand for determination of benefits.

### A. Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ erred by rejecting the assessment from treating psychiatric nurse practitioner, Jennifer Linehan, PMHNP, PsyNP, when the vocational expert testified the assessed limitations precluded all sustained work activity, and instead relied on the psychological consultative examiner's opinion. Plaintiff additionally states that the ALJ failed to further develop the record "to address [his] belief that [Ms. Linehan's] assessment was unsupported by objective findings."

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining

- 4 -

physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion. See id. The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. See id.; Reddick, 157 F.3d at 725. An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Reddick, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians. See Lester, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion ... ." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

As applicable to the instant matter, nurse practitioners are not considered "acceptable medical sources" under the Social Security regulations. See 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). Rather, these medical professionals are considered "other sources." See id. However, in determining whether a claimant is disabled, an ALJ must consider lay witness testimony, including other medical source opinions, concerning a claimant's ability to work.[2]

---

[2] The distinction between "other sources" and "acceptable medical sources" is significant because only an "acceptable medical source" may be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.902, 4040.1513(a). However, when there is an agency relationship between an "acceptable medical source" and an "other source," evidence from that "other source" may be ascribed to the supervising "acceptable medical source."

- 5 -

1  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted) (stating that
2  "[l]ay testimony as to a claimant's symptoms or how an impairment affects ability to work
3  is competent evidence ... and therefore cannot be disregarded without comment"); Dodrill
4  v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (ALJ must give reasons that are germane to each
5  witness for rejecting lay witness testimony); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)
6  (4) & (e); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (opinions from other
7  medical sources who are not acceptable medical sources "may provide insight into the
8  severity of the impairment(s) and how it affects the individual's ability to function").  The
9  ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane
10 to each witness for doing so.'"  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th
11 Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to
12 a claimant's symptoms is competent evidence that an ALJ must take into account, unless he
13 or she expressly determines to disregard such testimony and gives reasons germane to each
14 witness for doing so.")).

15    In August 2009, as part of the administrative proceedings, Elliot Salk, Ph.D.,
16 evaluated Plaintiff.  Plaintiff reported engaging in a variety of activities, including preparing
17 meals, housework (including cleaning dishes, mopping, cleaning the bathroom, taking out
18 trash, doing the laundry), monthly visits with his brother, limited shopping, fishing, and
19 reading.  Dr. Salk made no significant findings as part of his mental status examination, and
20 observed that Plaintiff had normal speech, adequate appearance, lucid associations,
21 appropriate thoughts, intact memory, and was oriented and alert.  Dr. Salk diagnosed mood
22 disorder, not otherwise specified, based on Plaintiff's self-reported symptoms.  He also noted
23 that Plaintiff's reported bipolar disorder and depression were in partial remission with
24 medication and after he stopped drinking alcohol.  (Tr. at 26, 337-44.)

---

See Buck v.. Astrue, 2010 WL 2650038, *5 (D. Ariz. July 1, 2010) (discussing Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (affording great weight to a nurse practitioner's opinion because she worked closely on an interdisciplinary team with a doctor)).

- 6 -

1       State agency psychologists also reviewed Plaintiff's medical records as part of the
2  proceedings. In August 2009, Stacy Koutrakos, Psy.D., found that Plaintiff's affective
3  disorder was not severe, and that he was only mildly limited in his ability to function. (Tr.
4  at 345-58.) In December 2009, Mary Downs, Ph.D., reviewed additional medical records
5  but re-affirmed Dr. Koutrakos's prior opinion that Plaintiff's mental impairment was not
6  severe. (Tr. at 489.)
7       Nurse Practitioner Jennifer Linehan evaluated Plaintiff several times in 2010 as part
8  of his mental health care. In March, September, and December 2010, Ms. Linehan found that
9  Plaintiff's mood was euthymic (normal), his affect appropriate, his thoughts and perception
10 were logical, he was oriented and alert, his memory was intact, and that he had good insight
11 and judgment. (Tr. at 631 (March 2010), 607 (September 2010), 590 (December 2010).)
12 Ms. Linehan consistently assessed GAF scores of 69 to 70. (Tr. at 631, 607, 590.)[3] Plaintiff
13 continued to seek sporadic mental health care in early 2011, and continued to report that he
14 was doing well. (Tr. at 579, 582 (March 2011), 547, 571 (June 2011).) Although he did
15 report increased symptoms and hardship after losing his access to care, (Tr. at 559), he also
16 confirmed that he was getting his medication again and was soon re-enrolled (Tr. at 570).
17 At her March 2011 evaluation, Ms. Linehan noted that Plaintiff was mildly depressed but
18 otherwise reported no findings; she assessed a GAF score of 65. (Tr. at 580.) In June 2011,
19 Ms. Linehan noted Plaintiff was anxious, irritable, and depressed and assessed a reduced
20 GAF score of 55, but did not make other findings of note. (Tr. at 561.)

---

[3] The Global Assessment of Functioning (GAF) scale ranges from 0 to 100 and is used by mental health practitioners to rate social, occupational, and psychological functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000) (DSM-IV). A GAF rating of 61 to 70 indicates that the individual has either mild symptoms or some difficulty in social, occupational, or school functioning, but is generally functioning pretty well, and has some meaningful interpersonal relationships. See id. A GAF rating between 51 and 60 indicates that the individual has either moderate symptoms or moderate difficulty in social, occupational, or school functioning. See id. GAF scores are not determinative of disability. See 65 Fed. Reg. 50746, 50764-65 (2000) (final rules) (GAF scale does not have direct correlation to severity requirements in mental impairment listings).

1    Ms. Linehan completed a medical assessment of Plaintiff's ability to perform work-
2 related activity in July 2011. (Tr. at 490-91.) She opined that Plaintiff was moderately
3 impaired in five areas, moderately severely impaired in eight areas, and that his symptoms
4 were expected to last 12 months or longer. (Tr. at 490-91.) During this same time period,
5 Plaintiff reported that he was doing well and stated that he did not need counseling. (Tr. at
6 555-56 (July 2011), 548 (August 2011).)

7    Ms. Linehan evaluated Plaintiff in September 2011 and noted improvement. (Tr. at
8 536.) Although Plaintiff was mildly anxious, his affect was appropriate, his thoughts and
9 perception were logical, he was oriented and alert, his memory was intact, and he had good
10 insight and judgment; she assessed a GAF score of 65. (Tr. at 536.) Plaintiff's self-reports
11 also confirmed he was doing well, and that he had returned for occasional therapy. (Tr. at
12 536, 540-42.)

13    In his evaluation of the objective medical evidence, the ALJ first addressed Ms.
14 Linehan's opinion stating, "the undersigned first notes that he unable to afford much weight
15 whatsoever to the assessment completed by the claimant's mental health treatment provider,
16 Jennifer Linehan, for several reasons (Exhibit 14F). At the outset, it should be noted that
17 although her opinion would normally be given more weight due to her treating relationship
18 with the claimant, in this matter, such affordance is not supported due to striking
19 inconsistencies found both within the assessment itself as well as between her assessment and
20 the other objective and opinion evidence of record." (Tr. at 30-31.) The ALJ continued
21 stating that Plaintiff's treatment notes have consistently indicated that her symptoms have
22 "markedly" improved and that his level of functioning has been greatly increased. (Tr. at 30-
23 31.) The ALJ found that the GAF scores alone demonstrate how "discordant her assessment
24 is with her treatment notes over the past year." (Tr. at 30-31.) The ALJ concluded his
25 discussion finding that Ms. Linehan's limited credentials as a nurse practitioner do not allow
26 him to consider her an "acceptable source" per Administration regulations and SSR 06-03.
27 (Tr. at 30-31.) Given these issues with her assessment, the ALJ rejected Ms. Linehan's
28 opinion. (Tr. at 30-31.)

1  The ALJ then discussed the findings of Dr. Salk giving "significant weight" to and 2 adopting his assessment. (Tr. at 31.) Specifically, the ALJ stated that Dr. Salk indicated that 3 Plaintiff had very few, if any, work-related limitations resulting from mental impairment, and 4 noted that Plaintiff's credibility was "suspect" due to a number of inconsistencies in his 5 reported symptoms and functioning – a conclusion which the ALJ agreed. (Tr. at 31.) The 6 ALJ also found that Dr. Salk's objective nature as an unbiased third party "lends further 7 credence to his findings, as do his extensive credentials in the field of mental impairment." 8 (Tr. at 31.) The ALJ concluded his discussion of Dr. Salk stating, "[i]n sum, although his 9 assessment was completed some time ago, it appears to be a much more accurate reflection 10 of the claimant's mental work-related capacity ... . As such, it has been relied upon in finding 11 the claimant capable of returning to employment." (Tr. at 31.)

12  Lastly, the ALJ addressed the assessments conducted by the State agency 13 psychological consultants. (Tr. at 31.) The ALJ noted that said assessments are consistent 14 with the opinion of Dr. Salk and, as such, have been given "fair weight" in his determination. 15 (Tr. at 31.)

16  The record reflects that the ALJ properly weighed all of the medical source opinion 17 evidence and specifically considered Ms. Linehan's assessment finding "striking 18 inconsistencies" within her own assessment as well as between her assessment and the other 19 objective and opinion evidence of record. (Tr. at 30-31.) Accordingly, the Court finds that 20 the ALJ properly considered and discounted Ms. Linehan's opinion by providing specific and 21 "germane" reasons. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (an ALJ may 22 discount testimony from "other sources" if the ALJ "gives reasons germane to each witness 23 for doing so"). The ALJ's determination is supported by substantial evidence and no further 24 development of the record is necessary. Therefore, the Court finds no error.

25 **B.    Plaintiff's Subjective Complaints**

26  Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence 27 of clear and convincing reasons for doing so.

28

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted).  General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[4] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature,

---

[4] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1    onset, duration, and frequency of the claimant's symptom; precipitating and aggravating
2    factors; [and] functional restrictions caused by the symptoms ... ."  Smolen, 80 F.3d at 1284
3    (citation omitted).

4        Plaintiff testified that his most serious medical impairment relates to his left shoulder,
5    in that he cannot lift his left arm over his head and cannot left heavy objects with his left
6    extremity.  (Tr. at 58.)  Plaintiff testified that Ms. Linehan prescribed him psychiatric
7    medication and that he saw a therapist.  (Tr. at 61-62.)  He described his emotions as
8    "settled" and "level."  (Tr. at 62.)  Plaintiff also stated that he felt depressed and didn't have
9    a lot of energy at times, and that he worried a lot.  (Tr. at 62.)

10       Having reviewed the record along with the ALJ's credibility analysis, the Court finds
11   that the ALJ made extensive credibility findings and identified several clear and convincing
12   reasons supported by the record for discounting Plaintiff's statements regarding his pain and
13   limitations.  Although the ALJ recognized that Plaintiff's medically determinable
14   impairments could reasonably be expected to cause the alleged symptoms, he also found that
15   Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
16   symptoms were not fully credible.  (Tr. at 28-30.)

17       In his evaluation of Plaintiff's credibility, the ALJ first addressed Plaintiff's
18   allegations of physical impairment.  The ALJ considered Plaintiff's treatment record and the
19   objective medical evidence finding the various treatment notes and medical records do not
20   confirm the limitations alleged by Plaintiff.  (Tr. at 29-30); see Carmickle, 533 F.3d at 1161
21   ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's
22   subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d
23   1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's
24   allegations supported ALJ's finding that claimant was not credible); Bunnell v. Sullivan, 947
25   F.2d 341, 346 (9th Cir. 1991) ("[U]nexplained, or inadequately explained, failure to seek
26   treatment or follow a prescribed course of treatment" is a relevant factor in assessing
27   credibility of pain testimony.); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ
28   may consider Social Security disability claimant's failure to follow treatment advice as a

1  factor in assessing Social Security disability claimant's credibility).  Specifically, Plaintiff's
2  medical records indicated that subsequent to his shoulder surgery Plaintiff received
3  significant relief.  Plaintiff had improved range of motion and was "doing well."  (Tr. at 29,
4  300-36, 374-84.)  The ALJ acknowledged that Plaintiff suffered a fall after surgery but found
5  that his failure to seek further treatment after alleged re-injury casts doubt on the veracity of
6  his alleged pain and limitation.  The ALJ noted that even after getting re-approved for
7  insurance coverage, Plaintiff never sought any additional treatment for symptoms of his
8  shoulder impairment.  (Tr. at 29, 499-533.)  The ALJ further noted a history of non-
9  compliance with medical recommendations even prior to surgery.  (Tr. at 29, 374-84.)
10  Lastly, the ALJ found that the assessments conducted by the State agency medical
11  consultants demonstrated that Plaintiff is capable of "at least" occasional use of his left upper
12  extremity, with no other exertional or non-exertional limitations.  (Tr. at 29, 366-73.)  The
13  ALJ concluded his discussion of Plaintiff's complaints regarding his physical impairments
14  stating, "[c]ombined with the lack of objective evidence, as well as the claimant's
15  inconsistent and sporadic treatment history and non-compliance with recommendations ...
16  , these factors support a finding that the claimant is not prohibited from employment by his
17  physical impairments."  (Tr. at 29.)

18  The ALJ next addressed Plaintiff's allegations of mental impairment, and again
19  considered Plaintiff's treatment record and the objective medical evidence finding the
20  treatment notes and medical records do not confirm the limitations alleged by Plaintiff.  (Tr.
21  at 29-30); see Carmickle, 533 F.3d at 1161; Batson, 359 F.3d at 1197.  The ALJ documented
22  the findings of Dr. Salk indicating that Plaintiff did not appear depressed or anxious, and that
23  his symptoms of bipolar and depression are in partial remission with medication and
24  abstinence from alcohol.  (Tr. at 29, 337-44.)  The ALJ also referenced the fact that Dr. Salk
25  opined that Plaintiff did not appear delusional, paranoid, manic, or psychotic, but rather
26  "settled" and "level" as Plaintiff, himself, testified at the hearing.  (Tr. at 29, 337-44.)  The
27  ALJ also analyzed the findings of Ms. Linehan (noted above) demonstrating that Plaintiff's
28

1  symptoms and condition are stable and well-controlled with medication. (Tr. at 29-30, 534-
2  648.)

3    The ALJ further discussed Plaintiff's daily activities. (Tr. at 29-30, 26, 337-44, 534-
4  648.) "[I]f the claimant engages in numerous daily activities involving skills that could be
5  transferred to the workplace, an adjudicator may discredit the claimant's allegations upon
6  making specific findings relating to the claimant's daily activities." Bunnell, 947 F.2d at 346
7  (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010)
8  (claimant's activities suggested a greater functional capacity than alleged). In addition to the
9  activities referenced previously in this decision, the ALJ also found that Plaintiff reported
10 that he completed a volunteer job of coaching baseball and that he planned to continue
11 coaching. He further denied any difficulty leaving the house or socializing with others;
12 stated that he was attending bible study at church and feeling more motivated and optimistic.
13 (Tr. at 30, 534-648.) While not alone conclusive on the issue of disability, an ALJ can
14 reasonably consider a claimant's daily activities in evaluating the credibility of his subjective
15 complaints. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008)
16 (upholding ALJ's credibility determination based in part of the claimant's abilities to cook,
17 clean, do laundry, and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676,
18 680-81 (9th Cir. 2005) (upholding ALJ's credibility determination based in part on the
19 claimant's abilities to cook, clean, shop, and handle finances).

20   In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
21 allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
22 are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
23 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
24 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
25 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
26 the Court finds no error.

27 \\\
28 \\\

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 11th day of August, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge